IN THE COURT OF COMMON PLEAS
NORTHUMBERLAND COUNTY, PENNSYLVANIA

| | |
|---|---|
| CHAD REINER and STEPHANIE REINER, Individually, and as Administrators of the ESTATE OF BABY GIRL REINER, Deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>NORTHUMBERLAND COUNTY, NORTHUMBERLAND COUNTY BOARD OF COMMISSIONERS, SAMUEL J. SCHICCATANO, JOSEPH M. KLEBON, KYMBERLEY L. BEST, RUSSELL, FELLMAN and COMMUNITY LIFE TEAM, INC.,<br><br>Defendants. | Civil Action - Law<br><br><br><br>Docket No. CV-24-307<br><br><br><br><br><br>Jury Trial Demanded. |

## COMPLAINT

Plaintiffs, Chad Reiner and Stephanie Reiner, Individually, (collectively, "Plaintiffs") and as Co-Administrators of the Estate of Paisley Reiner, Deceased, by and through their attorneys, Kepner, Kepner & Corba, P.C., for their Amended Complaint allege as follows:

**I. PARTIES**

1. Plaintiff, Chad Reiner, is an adult individual who resides at 185 Peach Tree Lane, Pitman, Pennsylvania.

2. Plaintiff, Stephanie Reiner, is an adult individual who resides at 185 Peach Tree Lane, Pitman, Pennsylvania.

3. Plaintiffs are the natural parents of Paisley Reiner.

4. On September 23, 2022, Paisley Reiner was born stillborn after approximately 32 weeks' of completed pregnancy.

5.  Plaintiffs are the Co-Administrators of the Estate of Paisley Reiner, having been duly appointed by the Northumberland County Register of Wills on July 31, 2023.

6.  Defendant, Northumberland County ("Northumberland"), is a municipal government organized pursuant to the laws of the Commonwealth of Pennsylvania with its address located at 399 Stadium Drive, Sunbury, Pennsylvania.

7.  Defendant, Northumberland County Board of Commissioners (the "Board"), is a local government entity organized pursuant to the laws of the Commonwealth of Pennsylvania with its address located at 399 Stadium Drive, Sunbury, Pennsylvania.

8.  Defendant, Samuel J. Schiccatano ("Schiccatano"), is an adult individual who can be served at 720 Northumberland County Drive, Coal Township, Pennsylvania. At all times relevant hereto, Schiccatano was a duly elected Commissioner of Northumberland County.

9.  Defendant, Joseph M. Klebon ("Klebon"), is an adult individual who can be served at 720 Northumberland County Drive, Coal Township, Pennsylvania. At all times relevant hereto, Klebon was a duly elected Commissioner of Northumberland County.

10. Defendant, Kymberley L. Best ("Best"), is an adult individual who can be served at 720 Northumberland County Drive, Coal Township, Pennsylvania. At all times relevant hereto, Best was a duly elected Commissioner of Northumberland County.

11. Defendant, Russell Fellman ("Fellman"), is an adult individual who can be served at 911 Greenough Street, Suite 2, Sunbury, Pennsylvania. At all times relevant hereto, Fellman was the 911 Coordinator in charge of the Northumberland County 911 Center.

12. Defendant, Community Life Team, Inc., is a Pennsylvania corporation with a registered business address located at 409 S. 2nd Street, Harrisburg, Pennsylvania.

13. Northumberland owns, operates, manages, directs and controls the Northumberland County 911 Center (the "911 Center"), located at 911 Greenough Street, Suite 2, Sunbury, Pennsylvania, and had the responsibility of adopting policies and implementing procedures and practices for the 911 Center.

## II. SUBJECT MATTER JURISDICTION AND VENUE

14. Plaintiff invokes jurisdiction pursuant to 28 U.S.C. § 1331 because the claims raise federal questions under 42 U.S.C. § 1983. Plaintiff further invokes supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for claims arising under state law because these claims form part of the same case and controversy as the claims brought under 42 U.S.C. § 1983.

15. Venue is appropriate in the Northumberland County Court of Common Pleas pursuant to 28 U.S.C. § 1391(b) because it is the judicial district in which the claims asserted herein arose.

## III. FACTUAL ALLEGATIONS

16. On September 23, 2022, Ms. Reiner was approximately 32 weeks' pregnant with Paisley Reiner.

17. On September 23, 2022, Ms. Reiner began experiencing stomach discomfort at in the afternoon. Ms. Reiner's pain worsened and became constant.

18. At approximately 3:00 p.m., Ms. Reiner contacted a triage nurse in the labor and delivery department at Geisinger Medical Center and described her condition. The nurse advised Ms. Reiner to contact 911 so she could be admitted to the hospital.

19. While on the phone with the nurse, Ms. Reiner experienced a sensation similar to her water breaking and believed that she was going into labor.

20. However, Ms. Reiner discovered that her water had not broken and that she was bleeding profusely.

21. Ms. Reiner immediately called 911 and spoke to a dispatcher at the 911 Center. She advised the dispatcher that it was a medical emergency and she was in need of an ambulance.

22. Ms. Reiner was advised that an ambulance would be dispatched immediately.

23. Two ambulance companies, Hegins Area Ambulance Association ("Hegins"), located in Valley View, Pennsylvania, and Area Services, Inc. ("Area Services"), located in Shamokin, Pennsylvania, are located within approximately ten miles of Ms. Reiner's residence. A third ambulance company, Upper Dauphin County Emergency Services, Inc. is located approximately 24 miles from Ms. Reiner's residence.

24. Ms. Reiner's mother-in-law, Luann Snyder, came to Ms. Reiner's residence minutes after she called 911.

25. When Ms. Snyder arrived, the kitchen was covered in blood and there was a pool of blood beneath Ms. Reiner.

26. After waiting approximately ten minutes, Ms. Snyder called 911 to find out when the ambulance would get there.

27. The dispatcher told Ms. Snyder that an ambulance had been dispatched and it was on the way.

28. After waiting another approximately ten to fifteen minutes, Ms. Snyder called 911 again and asked where the ambulance was coming from and how far away it was.

29. The dispatcher would not tell Ms. Snyder from where the ambulance had been dispatched.

30. The dispatcher assured Ms. Snyder that an ambulance had been dispatched, would be there soon, and to be patient.

4

31. If Ms. Reiner and Ms. Snyder had been informed that the ambulance was coming from Harrisburg, Pennsylvania over an hour away, they would have driven to the nearest hospital immediately.

32. After waiting another approximately ten to fifteen minutes, Ms. Snyder again called 911 and advised the dispatcher that if they can't get Ms. Reiner an ambulance, they needed to get Ms. Reiner a helicopter because she was bleeding out.

33. During Ms. Reiner's wait for the ambulance to arrive, she was in incredible pain and experienced constant gushes of blood from her vaginal area.

34. After waiting an additional fifteen minutes, the ambulance finally arrived.

35. The ambulance that was dispatched was from Community Life Team, from Harrisburg, Pennsylvania, located approximately 60 miles from Ms. Reiner's residence.

36. When the ambulance arrived, the EMTs forced Ms. Reiner to walk approximately 100 feet to the ambulance outside, even though Ms. Reiner believed she was hemorrhaging and advised them of the same.

37. The EMTs then asked Ms. Reiner to get on the stretcher herself, despite the fact that she was bleeding profusely and had difficulty walking.

38. The EMTs downgraded the call from a Code 3 response to a Code 1 response. The ambulance did not leave for approximately seven minutes after she was secured in the ambulance.

39. The ambulance did not use lights and sirens and stopped at every red light on the way to Geisinger Medical Center ("Geisinger").

40. Ms. Reiner vomited four times on the ambulance ride from her residence to Geisinger.

41. During the ambulance ride, the EMTs never took Ms. Reiner's blood pressure or administered an IV.

42. The ambulance did not contact Geisinger on its way to the hospital and the hospital was not aware of Ms. Reiner's condition when she arrived.

43. When the ambulance arrived at Geisinger, the nurses asked where Ms. Reiner's IV was and kicked the EMTs out.

44. When Ms. Reiner arrived at Geisinger, Paisley Reiner still had a heartbeat and Ms. Reiner was rushed to the operating room for an emergency Caesarean section.

45. Ms. Reiner was advised that she had a full placental abruption and hemorrhage.

46. Paisley Reiner was delivered stillborn at 5:36 p.m. on September 23, 2022.

47. Ms. Reiner was in surgery for five hours because the doctors could not stop the bleeding.

48. The medical staff at Geisinger were forced to give Ms. Reiner large doses of medications to promote blood clotting in an attempt to stop the bleeding.

49. The physician who delivered Paisley Reiner advised Ms. Reiner that if she had arrived at the hospital sooner, Paisley Reiner would have lived.

50. The physician believed that Ms. Reiner's condition started as a partial placental abruption and developed into a complete placental abruption by the time she arrived at Geisinger.

51. Ms. Reiner suffers from blood clots as a result of this incident.

52. Ms. Reiner has had three miscarriages since this incident.

53. The 911 Center never contacted Hegins or Area Services prior to dispatching Community Life Team from Harrisburg, Pennsylvania.

54. Both Hegins and Area Services were both in service and available on September 23, 2022.

55. On September 26, 2022, without notifying anyone, Mr. Fellman modified the Computer Aided Dispatch ("CAD") station order at the 911 Center after the death of Paisley Reiner.

56. Mr. Fellman changed the 13 EMS district station order to reflect the correct station order that should have been used on September 23, 2022 when Ms. Reiner contacted the 911 Center.

57. Mr. Fellman modified the CAD system station order to move Area Services much higher on the list of emergency services dispatched to a particular location.

58. Area Services was not recommended for dispatch on September 23, 2022 because it was listed deep in the station order prior to Mr. Fellman modifying it after Paisley Reiner's death.

59. Prior to September 26, 2022, the 911 Center's new CAD system did not match the station order of the previous Northumberland CAD system.

60. The CAD system in use on September 23, 2022 had been used by the 911 Center since June 2022.

61. Mr. Fellman failed to ensure that the CAD station order was correct and dispatched the closest emergency services prior to Paisley Reiner's death.

62. As a result, Hegins and Area Services were not contacted despite being located much closer to the Reiner's residence than Community Life Team.

63. According to an investigation by the Northumberland County District Attorney's Office, Ms. Reiner contacted the 911 Center at 3:22 p.m.

64. At 3:35 p.m., the 911 Center requested Hegins to respond but was told it was unavailable.

65. At 3:36 p.m., the 911 Center requested Community Life Team to respond and was advised it was available and would be dispatched.

66. On October 6, 2022, Matt Siko, the vice president of the Northumberland County Fire Chiefs Association, claimed the public was in "danger" due to mismanagement of the 911 Center.

67. At the same meeting fire officials aired grievances concerning prolonged dispatch times and significant dispatcher turnover and called for Mr. Fellman's termination.

68. Another fire chief was concerned that the mismanagement at the 911 Center would result in a civilian death.

69. Mr. Fellman ultimately resigned as 911 Coordinator on December 2, 2022.

70. Upon information and belief, the dispatchers at the 911 Center were not properly trained to dispatch ambulances.

71. At the time of Paisley Reiner's death, she was a viable fetus.

72. As a result of the delay in the ambulance arriving at Ms. Reiner's residence to administer life-saving medical care, Paisley Reiner experienced an increased risk of harm that resulted in her death.

73. As a direct and proximate result of Defendants' negligence, gross negligence, reckless disregard for Paisley Reiner's welfare and deliberate indifference to Paisley Reiner's serious medical needs as alleged herein, Paisley Reiner was placed at an increased risk of harm and, in fact, died as a result of Defendants' actions and omissions.

74. As a direct and proximate result of Defendants' negligence, gross negligence, reckless disregard for Paisley Reiner's welfare and deliberate indifference to Paisley Reiner's serious medical needs as alleged herein, Plaintiffs have undergone great physical and mental pain and suffering, great inconvenience in carrying out their daily activities and a loss of life's pleasures and enjoyment.

75. As a direct and proximate result of Defendants' negligence, gross negligence, reckless disregard for Paisley Reiner's welfare and deliberate indifference to Paisley Reiner's serious medical needs as alleged herein, Paisley Reiner went untreated for a critical period of time and ultimately resulted in her death.

76. As a direct and proximate result of Defendants' negligence, gross negligence, reckless disregard for Paisley Reiner's welfare and deliberate indifference to Paisley Reiner's serious medical needs as alleged herein, Paisley Reiner sustained physical pain, mental anguish, discomfort, inconvenience, distress and ultimately death as a result of her injuries.

77. As a direct and proximate result of Defendants' negligence, gross negligence, reckless disregard for Paisley Reiner's welfare and deliberate indifference to Paisley Reiner's serious medical needs as alleged herein, Paisley Reiner experienced great physical pain and suffering a loss of life's pleasures and enjoyment.

78. As a direct and proximate result of Defendants' negligence, gross negligence, reckless disregard for Paisley Reiner's welfare and deliberate indifference to Paisley Reiner's serious medical needs as alleged herein, Paisley Reiner sustained a loss of earnings, a loss of earning power, and a loss of earning capacity.

### COUNT I – VIOLATION OF PAISLEY REINER'S FEDERAL CIVIL RIGHTS AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983
**(against all Defendants)**

79. The preceding paragraphs are incorporated by reference as though fully set forth herein.

80. Defendants are liable to Plaintiffs for the injuries and damages herein which were directly and proximately caused by their negligence, gross negligence, reckless indifference and/or deliberate indifference to the serious medical needs of Paisley Reiner by:

9

a.  Failing to provide Paisley Reiner with emergency medical care in a timely manner;

b.  Failing to appropriately dispatch an ambulance located near the medical emergency;

c.  Failing to contact ambulance companies that were in service and available for calls;

d.  Failing to fully and/or appropriately staff the Northumberland County 911 Center;

e.  Failing to properly train Northumberland County 911 Center employees;

f.  Failing to ensure employees of the Northumberland County 911 Center were qualified to perform the functions and/or duties of their employment positions;

g.  Abandoning a known duty to train Northumberland County 911 Center dispatchers;

h.  Failing to properly supervise Northumberland County 911 Center dispatchers;

i.  Abandoning a known duty to supervise Northumberland County 911 Center dispatchers;

j.  Failing to address a pattern of behavior by Northumberland County 911 Center dispatchers that resulted in harm to the public;

k.  Failing to address the need for more or different training of Northumberland County 911 Center dispatchers;

l.  Failing to address the need for more or different supervision of Northumberland County 911 Center dispatchers;

m.  Violating Paisley Reiner's constitutional right to life as provided by the Fourteenth Amendment to the United States Constitution;

  n. Creating and/or implementing and/or enforcing a policy and/or custom and/or practice that led to the deprivation of a constitutional right.

81. As a direct and proximate result of Defendants' negligence, gross negligence, reckless indifference, and deliberate indifference to Paisley Reiner's serious medical condition, she sustained injuries and damages as set forth herein.

  WHEREFORE, Plaintiffs, Chad Reiner and Stephanie Reiner, Individually, and as Co-Administrators for the Estate of Paisley Reiner, demand judgment against Defendants for compensatory damages, punitive damages and attorney's fees in an amount in excess of $75,000.00, exclusive of interest and costs and in excess of any jurisdictional amount requiring compulsory arbitration.

### COUNT II – VIOLATION OF STEPHANIE REINER'S FEDERAL CIVIL RIGHTS AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983
**(against all Defendants)**

82. The preceding paragraphs are incorporated by reference as though fully set forth herein.

83. Defendants are liable to Plaintiffs for the injuries and damages herein which were directly and proximately caused by their negligence, gross negligence, reckless indifference and/or deliberate indifference to the serious medical needs of Stephanie Reiner by:

  a. Failing to provide Stephanie Reiner with emergency medical care in a timely manner;

  b. Failing to appropriately dispatch an ambulance located near the medical emergency;

  c. Failing to contact ambulance companies that were in service and available for calls;

  d. Failing to fully and/or appropriately staff the Northumberland County 911 Center;

e. Failing to properly train Northumberland County 911 Center employees;

f. Failing to ensure employees of the Northumberland County 911 Center were qualified to perform the functions and/or duties of their employment positions;

g. Abandoning a known duty to train Northumberland County 911 Center dispatchers;

h. Failing to properly supervise Northumberland County 911 Center dispatchers;

i. Abandoning a known duty to supervise Northumberland County 911 Center dispatchers;

j. Failing to address a pattern of behavior by Northumberland County 911 Center dispatchers that resulted in harm to the public;

k. Failing to address the need for more or different training of Northumberland County 911 Center dispatchers;

l. Failing to address the need for more or different supervision of Northumberland County 911 Center dispatchers;

m. Violating Paisley Reiner's constitutional right to life as provided by the Fourteenth Amendment to the United States Constitution;

n. Creating and/or implementing and/or enforcing a policy and/or custom and/or practice that led to the deprivation of a constitutional right.

84. As a direct and proximate result of Defendants' negligence, gross negligence, reckless indifference, and deliberate indifference to Stephanie Reiner's serious medical condition, she sustained injuries and damages as set forth herein.

WHEREFORE, Plaintiff, Stephanie Reiner, demands judgment against Defendants for compensatory damages, punitive damages and attorney's fees in an amount in excess of

$75,000.00, exclusive of interest and costs and in excess of any jurisdictional amount requiring compulsory arbitration.

### COUNT III – GROSS NEGLIGENCE
### (against Community Life Team, Inc.)

85. The preceding paragraphs are incorporated by reference as though fully set forth herein.

86. Community Life Team recklessly disregarded a known danger to Plaintiffs in its care of Plaintiffs.

87. The specific actions of the paramedic and emergency medical technicians, entrusted with the care and management of Plaintiffs, were grossly negligent and recklessly indifferent in both compliance to established medical protocol and the standard of care expected by any professional emergency medical service provider.

88. Emergency medical technicians and paramedics are trained and certified to conduct comprehensive initial patient assessments and to provide rapid life-saving interventions.

89. Medical interventions are performed by the acuity of the signs and symptoms identified in the assessment, such that every EMS practitioner knows the importance of conducting a thorough and accurate physical examination, as this sets the foundation for management, treatment, intervention and protocol decisions.

90. The failure of Community Life Team to perform any examination of Ms. Reiner was grossly negligent, recklessly and willfully indifferent, foreseeable and preventable.

91. Community Life Team demonstrated a reckless disregard for Plaintiffs when the EMS crew delayed care, failed to follow established protocol, failed to consult with medical command, and failed to recognize that treatment was inadequate and ineffective.

92. It was grossly negligent and recklessly indifferent to Plaintiffs to force Ms. Reiner to walk approximately 100 feet to the ambulance and climb onto the stretcher.

93. It was grossly negligent and recklessly indifferent to Plaintiffs to for Community Life Team to downgrade the call from a Code 3 response to a Code 1 response on the ambulance ride to Geisinger.

94. It was grossly negligent and recklessly indifferent to Plaintiffs to fail to use lights and sirens and stop at every stop light on its to Geisinger.

95. It was grossly negligent and recklessly indifferent to Plaintiffs to fail to take Ms. Reiner's blood pressure while Ms. Reiner was losing an extraordinary amount of blood.

96. It was grossly negligent and recklessly indifferent to Plaintiffs to fail to administer an IV while Ms. Reiner was losing an extraordinary amount of blood.

97. It was grossly negligent and recklessly indifferent to Plaintiffs to fail to contact Geisinger to alert the hospital to Plaintiffs' conditions prior to their arrival.

98. The Community Life Team EMS crew was grossly negligent in their actions and omissions, with reckless indifference to the lives of Plaintiffs.

99. The gross and recklessly indifferent negligence, as set forth above, significantly increased the risk of, and was a factual cause in causing, Paisley Reiner's death.

100. The damages and injuries sustained by Plaintiffs were caused by and were solely the direct and proximate result of the carelessness, gross negligence and/or willful misconduct of Community Life Team.

101. As a result of Community Life Team's carelessness, gross negligence and/or willful misconduct, Plaintiffs sustained severe and serious injuries as set forth above.

WHEREFORE, Plaintiffs, Chad Reiner and Stephanie Reiner, Individually, and as Co-Administrators for the Estate of Paisley Reiner, demand judgment against Defendants for

compensatory damages and punitive damages in an amount in excess of $75,000.00, exclusive of interest and costs and in excess of any jurisdictional amount requiring compulsory arbitration.

### COUNT IV – WRONGFUL DEATH ACTION
### (against Community Life Team, Inc.)

102. The preceding paragraphs are incorporated by reference as though fully set forth herein.

103. Under the Wrongful Death Act, Paisley Reiner left individuals who may claim entitlement to recovery for damages as Wrongful Death Act beneficiaries, and it is on behalf of any lawfully recognized beneficiaries that this action is brough. Those who may claim entitlement are:

> Chad Reiner (Paisley Reiner's Father)
> 185 Peach Tree Lane
> Pitman, PA 17964.
>
> Stephanie Reiner (Paisley Reiner's Mother)
> 185 Peach Tree Lane
> Pitman, PA 17964

104. Plaintiffs, Chad Reiner and Stephanie Reiner, Individually and as Co-Administrators of the Estate of Paisley Reiner, claim the full measure of all damages available under the Wrongful Death Act and supporting case law.

105. Chad Reiner and Stephanie Reiner, the potential beneficiaries under the Wrongful Death Act, have been fully informed of this action.

106. By reason of the death of Paisley Reiner, her survivors have been deprived of her support, comfort, society and services, all to their damage.

107. Paisley Reiner's death was the direct and proximate result of the conduct of Community Life Team.

WHEREFORE, Plaintiffs, Chad Reiner and Stephanie Reiner, Individually and as Co-Administrators of the Estate of Paisley Reiner, demand judgment in their favor against

Community Life Team, Inc. for wrongful death and survival damages, compensatory and punitive damages in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, plus interest and costs.

### COUNT V – SURVIVAL ACTION
### (against Community Life Team, Inc.)

108. The preceding paragraphs are incorporated by reference as though fully set forth herein.

109. Plaintiffs brings this action on behalf of the Estate of Paisley Reiner, pursuant to the Pennsylvania Survival Action, 42 Pa. C.S.A. §8302, and claims on behalf of the estate all the damages recoverable by law including, but not limited to, Paisley Reiner's pain and suffering and loss of earnings and future earnings capacity.

WHEREFORE, Plaintiffs demand judgment in their favor against Community Life Team, Inc. for wrongful death and survival damages, compensatory and punitive damages in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, plus interest and costs.

KEPNER, KEPNER & CORBA, P.C.

_____
Franklin P. Kepner, Jr., Esquire
123 West Front Street
Berwick, PA 18603
(570) 752-2766
I.D. No. 26156
Attorney for Plaintiffs

_____
Franklin E. Kepner III, Esquire
123 West Front Street
Berwick, PA 18603
(570) 752-2766
I.D. No. 323158
Attorney for Plaintiffs

## VERIFICATION

I, Chad Reiner, verify that the foregoing, is true and correct to the best of my knowledge, information and belief. I understand that false statements made herein are subject to the penalties of 18 Pa. C.S.A Section 4904, relating to unsworn falsification to authorities.

_____
Chad Reiner

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Franklin E. Kepner, Jr, Esq.

Signature: _____

Name: Franklin E. Kepner, Jr Esquire

Attorney No. (if applicable): 26156

Rev. 12/2017

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet

Northumberland County

*For Prothonotary Use Only:*

Docket No: CV-24-307

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court*

## SECTION A

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

**Lead Plaintiff's Name:** Chad Reiner and Stephanie Reiner, individual, et., al.

**Lead Defendant's Name:** Northumberland County et. al.

**Are money damages requested?** ☒ Yes  ☐ No

**Dollar Amount Requested:** (check one)
- ☐ within arbitration limits
- ☒ outside arbitration limits

**Is this a *Class Action Suit*?** ☐ Yes  ☒ No

**Is this an *MDJ Appeal*?** ☐ Yes  ☒ No

**Name of Plaintiff/Appellant's Attorney:** Franklin E. Kepner, Jr. Esq.

☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

## SECTION B

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other:

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other:

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☒ Medical
- ☐ Other Professional:

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other
- ☐ Other:

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other:

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other
- ☐ Zoning Board
- ☐ Other:

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other:

*Updated 1/1/2011*