IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHAD REINER *et al.*, | No. 4:24-CV-00493 |
| Plaintiffs, | (Chief Judge Brann) |
| v. | |
| NORTHUMBERLAND COUNTY *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

**MAY 15, 2024**

The law does not always align with what one may believe is right, just, or fair. This painful fact is the necessary reality of a well-ordered legal system. In this case, the careless conduct of a 911 dispatcher led to a terrible tragedy. But for the individual citizen, the United States Constitution is mainly a charter of negative liberties. It provides no remedy for this harm. Nor is federal court an appropriate forum to talk through questions of state law. So this lawsuit is dismissed with prejudice.

**I.        BACKGROUND**

In February 2024, Chad Reiner and Stephanie Reiner, individually and as co-administrators of the estate of Paisley Reiner ("Plaintiffs"), filed a complaint in the Court of Common Pleas of Northumberland County against Northumberland County ("Northumberland"), the Northumberland County Board of

Commissioners, Community Life Team, Inc. ("CLT"), Samuel J. Schiccatano, Joseph M. Klebon, Kymberly L. Best, and Russell Fellman (collectively, "Defendants").[1] In March 2024, Defendants removed the case to this Court.[2] In April 2024, Defendants filed a motion to dismiss[3] which is now ripe for disposition. For the reasons stated below, it is granted.

## II. DISCUSSION

### A. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[4] and *Ashcroft v. Iqbal*,[5] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the

---

[1] Northumberland County Docket, Doc. 1-2.
[2] Notice of Removal, Doc. 1.
[3] Motion to Dismiss, Doc. 6.
[4] 550 U.S. 544 (2007).
[5] 556 U.S. 662 (2009).
[6] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[7]

### B.   Facts Alleged in the Complaint

The complaint in this case revolves around the negligent training and response of a 911 Center and dispatcher, whose response to a call requesting emergency medical assistance exacerbated Stephanie Reiner's injuries and resulted in the death of her unborn daughter, Paisley.

On September 23, 2022, Stephanie Reiner was approximately 32 weeks pregnant with Paisley.[8] Stephanie Reiner began experiencing stomach discomfort that same afternoon, which worsened and became constant.[9] Reiner contacted a triage nurse in the labor and delivery department at Geisinger Medical Center at approximately 3:00 p.m.[10] While on the phone with the nurse, Reiner felt a sensation similar to her water breaking and believed she was going into labor.[11] After Reiner described her condition, the nurse advised her to contact 911 so that she could be admitted to the hospital.[12] After the call, however, Reiner discovered

---

[7] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
[8] Complaint, Doc. 1-5 ¶16.
[9] *Id.* ¶17.
[10] *Id.* ¶18.
[11] *Id.* ¶19.
[12] *Id.* ¶18.

that her water had not broken, and that she was bleeding profusely.[13] She immediately called 911 and spoke to a dispatcher at the 911 Center, informing the dispatcher that this was a medical emergency and that she was in need of an ambulance.[14] The dispatcher advised Reiner that an ambulance would be dispatched immediately.[15]

Reiner's mother-in-law Luann Snyder came to the residence minutes after Reiner called 911.[16] Snyder observed a pool of blood beneath Reiner and throughout the kitchen.[17] After waiting for the ambulance for ten minutes, Snyder called 911 to find out when it would arrive.[18] The dispatcher stated that an ambulance had been dispatched and was on the way.[19] After waiting another ten to fifteen minutes, Snyder called 911 again, asking where the ambulance was coming from and how far away it was.[20] But the dispatcher refused to tell Snyder where the ambulance had been dispatched from.[21] Instead, the dispatcher reiterated that an ambulance had been dispatched and would be there soon, and that Snyder should be patient.[22] Snyder waited another ten to fifteen minutes, and then again called

---

[13] *Id.* ¶20.
[14] *Id.* ¶21.
[15] *Id.* ¶22.
[16] *Id.* ¶24.
[17] *Id.* ¶25.
[18] *Id.* ¶26.
[19] *Id.* ¶27.
[20] *Id.* ¶28.
[21] *Id.* ¶29.
[22] *Id.* ¶30.

911.[23] She advised the dispatcher that if they could not get Reiner to an ambulance, they needed to get her to a helicopter because she was bleeding out.[24] After an additional fifteen minutes of waiting, the ambulance finally arrived.[25] Throughout the time Reiner waited for the ambulance to arrive, she experienced severe pain and constant gushes of blood from her vaginal area.[26]

Two ambulance companies are located within approximately ten miles of Reiner's residence, while a third is located approximately 24 miles from her residence.[27] Yet unbeknownst to Reiner and Snyder, the 911 Center never contacted these companies, which were in service and available on the date of Reiner's incident.[28] Instead, the ambulance which actually arrived was in fact coming from Harrisburg, Pennsylvania, which was over an hour away from Reiner's residence.[29] If Reiner and Snyder had known that the ambulance was coming from Harrisburg, they would have driven to the nearest hospital immediately.[30]

Reiner's misfortune did not end with the arrival of the ambulance. The ambulance that was dispatched was from CLT, located approximately 60 miles

---

[23] *Id.* ¶32.
[24] *Id.*
[25] *Id.* ¶34.
[26] *Id.* ¶33.
[27] *Id.* ¶23.
[28] *Id.* ¶53-54.
[29] *Id.* ¶31.
[30] *Id.*

from Reiner's residence.[31] After arriving at Reiner's residence, the Emergency Medical Technicians ("EMTs") forced Reiner to walk approximately 100 feet to the ambulance outside, even though Reiner advised them that she believed she was hemorrhaging.[32] The EMTs then asked Reiner to get on the stretcher by herself, despite her profuse bleeding and difficulty walking.[33] They then downgraded the call from a Code 3 response to a Code 1 response,[34] and did not leave for approximately an additional seven minutes after Reiner was secured in the ambulance.[35] The ambulance did not use lights and sirens and stopped at every red light on the way to Geisinger Medical Center ("Geisinger").[36] And the EMTs never took Reiner's blood pressure or administered intravenous ("IV") therapy.[37] During the ambulance ride, Reiner vomited four times.[38]

The EMTs never contacted anyone at Geisinger on the way to the hospital, and Geisinger personnel were unaware of Reiner's condition when she arrived.[39] After the ambulance arrived at Geisinger, the Geisinger nurses asked why Reiner did not have an IV and sent the EMTs away.[40] Upon Reiner's arrival at Geisinger,

---

[31] *Id.* ¶35.
[32] *Id.* ¶36.
[33] *Id.* ¶37.
[34] *Id.* ¶38.
[35] *Id.*
[36] *Id.* ¶39.
[37] *Id.* ¶41.
[38] *Id.* ¶40.
[39] *Id.* ¶42.
[40] *Id.* ¶43.

6

Paisley Reiner, her unborn daughter, still had a heartbeat.[41] Reiner was rushed to the operating room for an emergency Caesarean section.[42] Geisiner medical personnel informed Reiner that she had a full placental abruption and hemorrhage.[43] Reiner's surgery continued for five hours because doctors could not stop her bleeding, and doctors were forced to give Reiner large doses of medications to promote blood clotting to attempt to stop the bleeding.[44]

Ultimately, Paisley Reiner was delivered stillborn that same day.[45] Reiner's treating physician advised her that if she had arrived at the hospital sooner, Paisley Reiner would have survived the trauma.[46] The physician stated that Reiner's condition started as a partial placental abruption and developed into a complete abruption by the time she arrived at Geisinger. As a result of this incident, Reiner suffers from blood clots and has had three miscarriages.[47]

On September 26, 2022—three days after Reiner's incident—Russell Fellman, the 911 Coordinator in charge of the Northumberland County 911 Center, modified the Computer Aided Dispatch ("CAD") station order relating to Reiner's call at the 911 Center.[48] Fellman changed the 13 EMS district station order to reflect the correct station order that should have been used when Reiner originally

---

[41] *Id.* ¶44.
[42] *Id.*
[43] *Id.* ¶45.
[44] *Id.* ¶48.
[45] *Id.* ¶46.
[46] *Id.* ¶49.
[47] *Id.* ¶51-52.
[48] *Id.* ¶¶11, 55.

contacted the 911 Center.[49] Although Area Services was not recommended for dispatch on September 23, 2022 because it was listed deep in the station order, Fellman also modified the CAD system station order to move Area Services higher on the list of emergency services dispatched to a particular location.[50]

The Northumberland County District Attorney's Office investigated the incident.[51] In October 2022, the Northumberland County Fire Chiefs Association's vice president claimed that mismanagement of the 911 Center had placed the public in danger; another fire chief expressed concern that mismanagement of the 911 Center would result in civilian death.[52] At this same meeting, fire officials aired grievances concerning prolonged dispatch times and significant dispatcher turnover, and called for Fellman's termination.[53] Fellman resigned as 911 Coordinator in December 2022.[54] According to Plaintiffs, dispatchers at the 911 Center were not properly trained to dispatch ambulances.[55]

Chad Reiner, Stephanie Reiner, and the estate of Paisley Reiner now bring a five-count complaint against Defendants.[56] Counts I and II seek damages against all defendants for alleged violations of Paisley Reiner and Stephanie Reiner's

---

[49] *Id.* ¶55.
[50] *Id.* ¶56-57.
[51] *Id.* ¶63.
[52] *Id.* ¶66, 68.
[53] *Id.* ¶67.
[54] *Id.* ¶69.
[55] *Id.* ¶70.
[56] *Id.*

8

federal constitutional rights under Title 18 U.S.C. § 1983.⁵⁷ The remaining counts are brought exclusively against Defendant CLT under Pennsylvania state law. Count III states a claim for Gross Negligence, Count IV seeks damages under Pennsylvania's Wrongful Death Act, and Count V seeks damages under Pennsylvania's Survival Action statute.⁵⁸

### III. ANALYSIS

Plaintiffs' Section 1983 claims fail because they have alleged no violation of their federal constitutional rights. Because there are no surviving federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

#### A. Section 1983 Claims Against All Defendants

Title 42 U.S.C. § 1983 provides a cause of action for violations of the United States Constitution under color of state law.⁵⁹ For a defendant to be liable under Section 1983, there must be an underlying violation of the plaintiff's constitutional rights,⁶⁰ the defendant must be personally involved in that violation,⁶¹ and that defendant must have acted "under color of state law," that is, he must be a "state

---

⁵⁷ *Id.* at 9-12.
⁵⁸ *Id.* at 12-16.
⁵⁹ *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002).
⁶⁰ *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002).
⁶¹ *Lozano v. N.J.*, 9 F.4th 239, 241 (3d Cir. 2021).

actor."[62] A municipal body is considered a "person" which can be liable under Section 1983, but only for its own acts.[63]

A defendant need not be a government officer or agency to act under color of state law for purposes of Section 1983.[64] But in their brief in opposition, Plaintiffs concede that CLT is not a state actor and withdraw their Section 1983 claim as to this defendant.[65] Without opining on whether CLT acted under color of state law, the Court dismisses these claims.

Plaintiffs' Section 1983 claims against the other Defendants fail because Plaintiffs have not alleged a violation of Stephanie or Paisley Reiner's constitutional rights. The Bill of Rights is a charter of negative liberties, prohibiting government action rather than requiring it. The Fourteenth Amendment to the United States Constitution is no different. It prohibits any state from "depriv[ing] any person of life, liberty, or property, without due process of law."[66]

The Third Circuit has long-standing precedent that there is no constitutional right to receive emergency ambulance services, nor is there "an affirmative obligation on the State to provide competent rescue services if it chooses to

---

[62] *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).
[63] *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).
[64] *See Daniels v. N.H.S. N.W. Human Servs.*, No. 18-3128, 2020 U.S. Dist. LEXIS 42568, at *3 (E.D. Pa. Mar. 10, 2020) (reciting four tests to determine if a party is a state actor for Section 1983 liability).
[65] Brief in Opposition to Community Life Team's Motion to Dismiss, Doc. 9 at 6.
[66] U.S. Const. amend. xiv.

provide them."[67] So any injuries resulting from flawed or incompetent emergency rescue services are not constitutional injuries, and hence not actionable under Section 1983.[68] Plaintiffs' argument that they only waited an hour for the ambulance because they did not know it would take so long requires a closer analysis of this Circuit's "state-created danger" theory of liability.

In *Deshaney v. Winnebago County Department of Social Services*, the Supreme Court held that there is no substantive due process right to be free from private violence, but noted that the state had not, in that case, created the danger faced by the plaintiff.[69] The Third Circuit expounded on this dictum to establish the "state-created danger" theory of liability in *Kneipp v. Tedder*.[70] Under the state-created danger theory, four elements must be satisfied: (1) foreseeable and fairly direct harm; (2) actions marked by 'a degree of culpability that shocks the conscience;" (3) a relationship with the state making the plaintiff a foreseeable

---

[67] *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 478 (3d Cir. 2003); *Badway v. City of Pa.*, 415 F.App'x 420, 421 (3d Cir. 2011); *see also Deshaney v. Winnebago Cnty. of Soc. Servs.*, 489 U.S. 189, 196 (1989) ("The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.").

[68] *Id.*; *see also Johnson v. City of Phila.*, 975 F.3d 394 (3d Cir. 2020) (no constitutional violation when fire station dispatcher accidentally dispatched fire truck to wrong address, and fire fighters did not know that people were trapped in the building when they finally did arrive, causing their deaths).

[69] 489 U.S. at 201.

[70] 95 F.3d 1199, 1205-06 (3d Cir. 1996); *see also Johnson*, 975 F.3d 394, 398-400 (tracing this Circuit's development of the state-created danger theory).

victim; (4) an affirmative use of state authority in a way that created a danger, or made others "more vulnerable than had the state not acted at all."[71]

In the 2003 decision of *Brown v. Pennsylvania Department of Health Emergency Medical Services Training Institute*, the Third Circuit implied that the state-created danger theory may be viable for an EMT's unduly delayed arrival.[72] However, subsequent development of the state-created danger exception and its affirmative conduct element clarifies that these circumstances present no constitutional violation.

The fourth element of affirmative conduct "is typically the most contested."[73] In *Ye v. United States*, the Third Circuit subdivided affirmative conduct into three further elements.[74] "The three necessary conditions to satisfy the fourth element of a state-created danger claim are that: (1) a state actor exercised his or her authority, (2) the state actor took an affirmative action, and (3) this act created a danger to the citizen or rendered the citizen more vulnerable to danger than if the state had not acted at all."[75] The first element's authority language is simply a reflection of the state actor requirement for all Section 1983 claims.[76] The

---

[71] *Johnson*, 975 F.3d at 398-400.
[72] 318 F.3d at 482 (holding that Section 1983 liability for the unduly delayed arrival of EMTs requires that the state actor's conduct "shocks the conscience"). *Badaway v. City of Philadelphia* is inapposite because that plaintiff did not raise the state-created danger exception to *Deshaney* on appeal. 415 F.App'x at 421.
[73] *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 242 (3d Cir. 2016).
[74] 484 F.3d 634, 639 (3d Cir. 2007).
[75] *Id.* (citing *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281-82 (3d Cir. 2006)).
[76] *Id.* at 640.

affirmative act requirement, however, necessitates an act which somehow restrains the plaintiff's liberty, in a way analogous to the restraints involved in incarceration and institutionalization.[77]

The *Ye* court applied this principle to determine whether a medical doctor's assurances that "there is nothing to worry about" and that he need not seek medical assistance were affirmative acts.[78] While a state actor's assurances can surely expose a plaintiff to more harm by causing him to rely on those assurances, such reliance is not a cognizable restraint of liberty under the Due Process Clause, and so "cannot be used as an end run around *DeShaney*'s core holding."[79] The Third Circuit therefore concluded that the doctor's assurances could not constitute a deprivation of liberty, and so held that "a mere assurance cannot form the basis of a state-created danger claim."[80] *Ye* distinguished its facts from *Rivas v. Passaic County*, in which an EMT's misrepresentation to a police officer that the plaintiff had attacked her, when really, he was undergoing an epileptic seizure, resulted in officers restraining him and ultimately causing his asphyxiation.[81]

---

[77] *Id.* at 641. *See, e.g.*, *Mears v. Connolly*, 24 F.4th 880, 886 (3d Cir. 2022) (nurse leaving plaintiff alone in room with dangerous patient was an affirmative act because her movements within the facility were controlled by personnel and she was not permitted to go outside the visiting room); *Horton v. Flenory*, 889 F.2d 454, 458 (3d Cir. 1989) (police officer who allowed night club owner to interrogate suspect engaged in affirmative act because he "used his official status to confirm that the night club owner was free to continue the custodial interrogation" despite signs of physical mistreatment).

[78] *Ye*, 484 F.3d at 640.

[79] *Id.* at 642 (quoting *Rivera v. Rhode Island*, 402 F.3d 27, 30 (1st Cir. 2005)).

[80] *Id.* at 640, 642.

[81] *Id.* at 639 (citing *Rivas v. City of Passaic*, 365 F.3d 181, 186-88 (3d Cir. 2004)).

The distinction in the case at bar is that in addition to the 911 dispatcher's assurances, the dispatcher also refused to tell Reiner from where the ambulance had been dispatched, and arguably misrepresented the truth by telling her that the ambulance would be there "soon." But neither act is legally distinguishable from the dispatcher's assurances; all of the dispatcher's statements caused Reiner and Snyder to rely on the ambulance in the hopes that it would arrive sooner than it did, but none of the statements deprived either of their ability to drive to a hospital themselves.[82]

One line of cases holds that where the state has taken on responsibility for a vulnerable person and then voluntarily abandoned it, relinquishing that responsibility is an affirmative act capable of violating the person's substantive Due Process rights. But these cases extend only to persons whose vulnerabilities inherently deprive them of free action, such as the intoxicated or young children.[83]

The state acts affirmatively if it undertakes responsibility to care for such persons and then relinquishes it under circumstances which place the person under an increased risk of harm as compared to the prior "status quo."[84] In effect, then, the state actor is acting affirmatively by displacing the vulnerable person's would-

---

[82] *See Perez v. City of Phila.*, 701 F.Supp. 2d 658, 670 (E.D. Pa. 2010); *Lamey v. Northumberland Cnty.*, No. 4:13-CV-00379, 2014 U.S. Dist. LEXIS 32866 (M.D. Pa. Mar. 13, 2014) (Mehalchick, M.J.), *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 32352; *Thornton v. City of Pittsburgh*, 777 F.Supp. 2d 946, 954 (W.D. Pa. 2011).
[83] *Kneipp*, 95 F.3d at 1209; *L.R.*, 836 F.3d 244.
[84] *Id.*

be protector and assuming that duty of care in his stead.[85] Nothing of the kind is alleged here. Stephanie Reiner was not such a vulnerable person even while injured, the state does not assume responsibility over injured persons by offering assurances,[86] and no would-be protector was displaced.

Accordingly, Plaintiffs' Section 1983 claim fails under the state-created danger theory of liability.

### B. State Law Claims Against CLT

Plaintiffs also bring three counts against CLT premised on Pennsylvania state law. The parties both brief on whether such claims may be brought, and if so, whether they are plausibly alleged. But the Court does not reach these issues because it declines to exercise supplemental jurisdiction.

While the Court may exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction."[87] While a "district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over

---

[85] *See The v. Bloomsburg Univ. of Pa.*, No. 21-2111, 2022 U.S. App. LEXIS 12793, at *7-8 (3d Cir. May 12, 2022) (explaining that doctor's assurances to patient are not analogous to assumption of care in *Kneipp* and *L.R.* because they did not deprive plaintiff of would-be protector).

[86] *See id.*; *cf. Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 172 (3d Cir. 2017) (football coach engaged in affirmative act by compelling injured student to continue practice).

[87] 28 U.S.C. § 1367(c)(3).

which it had original jurisdiction is purely discretionary,"[88] "in the Third Circuit, '[t]he general approach is for a district court to . . . hold that supplemental jurisdiction should not be exercised when there is no longer any basis for original jurisdiction.'"[89] As all federal claims have been dismissed, this Court finds that declining supplemental jurisdiction is proper, not unfair to the parties, and does not unduly hinder judicial economy. Accordingly, Plaintiffs' state law claims, Counts III-V, are dismissed without prejudice.[90]

## IV. CONCLUSION

The Court has great sympathy for the hardship Plaintiffs have suffered, but their case does not belong in federal court because they have not plausibly alleged any violation of the United States Constitution.

"Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."[91] The Court has not dismissed the federal claims against CLT with prejudice as it did not reach the

---

[88] *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).
[89] *Edlin Ltd. v. City of Jersey City*, Civil Action No. 07-cv-3431 (PGS), 2008 U.S. Dist. LEXIS 41118, at *24 (D.N.J. May 23, 2008) (quoting *Atkinson v. Olde Economie Fin. Consultants, Ltd.*, No. 05-772, 2006 U.S. Dist. LEXIS 54289, at *5 (W.D. Pa. Aug. 4, 2006)); *Ray v. Eyster (In re Orthopedic "Bone Screw" Prods. Liab. Litig.)*, 132 F.3d 152, 155 (3d Cir. 1997); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Thornton*, 777 F.2d at 954-55.
[90] *See Figueroa v. Buccaneer Hotel*, 188 F.3d 172, 182 (3d Cir. 1999); *Korvettes, Inc. v. Brous*, 617 F.2d 1021, 1024 (3d Cir. 1980 ("A dismissal for lack of jurisdiction is plainly not a determination of the merits of the claim. Ordinarily, such a dismissal is 'without prejudice.'").
[91] *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

merits of this claim, but it nevertheless denies leave to amend because Plaintiffs have voluntarily withdrawn these claims and no other federal claim survives.

The claims against the remaining Defendants are dismissed with prejudice because granting leave to amend would be futile. A complaint is "futile" if even, as amended, it would fail to state a claim upon which relief could be granted.[92] Here, applying the holding in *Ye v. United States*, this Court can conceive of no set of facts under which a 911 dispatcher's assurances or misrepresentations would restrain a person's liberty in a manner like incarceration or institutionalization. And Plaintiffs' Section 1983 Due Process claims against these Defendants are based solely on the 911 dispatcher's conduct. So although there is a "liberal pleading philosophy of the federal rules" no amendment will be permitted because another opportunity to plead a case against these defendants would be futile.[93]

Because all federal claims have been dismissed and the Court declines to exercise supplemental jurisdiction, this case will be dismissed from this Court.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[92] *Id.*
[93] *See Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).